Good morning, Your Honors. May it please the Court, Jonathan Dabiri on behalf of Mr. Kipperman, a court-appointed receiver in proceedings in state court in San Diego County. As of March 16, 2012, the Brewer creditors, for whom Mr. Kipperman was appointed as a post-judgment collection receiver, had four separate liens in the property of Point Center Financial. They had a lien arising out of an order to appear for a debtor's exam, which we all call an ORAP, and they had three judgment liens as a result of filing UCC notice of judgment lien statements with the California Secretary of State. When was the first lien effective? When was it served on the debtor? Was it March 16, 2012? It was served March 16. But then the question is, what's the evidence regarding when the assignments became effective, right? Yes. Well, that is of the four bases upon which the bankruptcy court refused to honor these liens, one was when was the assignment effective. And, candidly, Your Honor, that is the one that troubles us most. But as to when the assignment became effective, do you agree that the evidence is conflicting? No, we do not. There is no evidence that was accepted by the bankruptcy court, and in fact no evidence, of a February oral assignment. And I will say there's a side issue of whether March 15 or 16 is a controlling date because of when the ORAP was issued, but that needn't detain us because the bankruptcy court essentially said that doesn't matter. It's a tempest in a teapot is what he said. Tempest in a teapot. So it's not like on the 15th everything got signed as opposed to the 16th. Well, the key question, what I'm saying is, was the assignment from Point Center Financials, PCF, to this CALCOM, did it occur before or after your judgment liens? Is that the key? Yes, Your Honor, that is the key issue with respect to that issue. And why is that? I mean, is it because state law establishes priority based on who came first? Is that why it's so important? Yes. Was that right to management fees still owned by PCF or had it assigned it away on March 16? And that's based on state law. And that's based on state law. It's not bankruptcy law. It's really state law. That's an issue of state law. And I gather there's no dispute among the sides about whether that's true. No, the key is a factual question, not the legal. If the assignment was prior to the judgment liens, you're going to lose. On the other hand, if the assignment came after the judgment liens, you win. And essentially both sides agree to that? Absolutely, that's accurate for both sides. And you have to remember the context in which this arose. It was a dispute over Mr. Grom. I should mention I'd like to reserve three minutes. I'm sorry, I forgot to mention that. Keep track of your own time. I see the clock. And the time that's on the clock is the total time. I understand, Your Honor. That's all that happened to your prior case. Fortunately, I had an argument before the Ninth Circuit a couple of months ago, so I remember a few of the rules. The issue was first briefed in the context of whether certain funds could be used to pay the accounting firm for the bankruptcy estate. And we objected to it on the basis of our liens. The matter was briefed. And the question of whether the liens had attached prior to or after March 16 was given very short shrift in that initial briefing. Because they argued, well, certainly it happened prior to April 13, which was the latest of a fifth lien that really isn't relevant here. And we said, no, it happened in mid-March. That was the briefing. We then got the opinion of Judge Albert on the original motion, which raised the issue of whether the assignment had happened before or after March 16. And his written opinion on that issue is, to use a word he used later in an oral ruling, murky. He wrote that the court discusses the written assignment and says it was signed on or about, he never gave us a precise date, March 15. And Your Honors may recall, that's the date by e-mail that was transmitted by in-house counsel to Mr. Harkin. Well, let me ask you this since your time is short. Assuming for the moment, and I know you're contesting that, that you've got the burden to demonstrate priority, can you point me to where in the record is a date or is evidence that the transfer occurred after? Certainly. The date became effective. Well, the first day he had it, that Mr. Harkin had the written assignment, was March 15 when it was e-mailed to him. Judge Albert has said, well, it's a tempest in a teapot, whether it was 15 or 16 for the origin of our ORAP lien. So that means it wasn't signed on March 15 or 16. We have the deposition testimony of Mr. Martins, and we've cited it in our briefs. Where Mr. Martins says, he is asked, you dated this August 1 of 2012, but it was signed sometime after March, and that's the question asked of him, and he says, correct. So the deposition testimony, which was before the court, of the person who drafted the assignment document and who was not around months later when it was finally signed, says it was in March, or after March, rather. Right, and that's why the district court, or maybe it was the bankruptcy court, I forget, which said the record is murky because the former in-house counsel said that, well, potentially it was signed after March, but maybe it was signed before March. I don't really know when the assignment occurred. And so given that ambiguity, maybe this case then turns on who's got the burden of proof. First of all, Judge Albert never said it was signed prior to March 15. What he said was there was an argument for an oral assignment in February, and that's one candidate. Then he says, and then there's the mid-March, and he never says when in mid-March that he favors this candidate, but he never finds that, and then he says, and then there's the date of April, which we had at one point argued when that was relevant, but it no longer is. So we never have a finding from Judge Albert as to exactly when this occurred. And that, in fact, is one of our- Albert, the bankruptcy judge? He's the bankruptcy judge, yes, Your Honor. Well, does he have to be specific? If he was correct in placing the burden on you and the record is unclear, couldn't he just say, well, the record is really unclear, you bear the burden, and so therefore you haven't shown me that the assignment occurred after the lien became effective, and so there's no indication that you're entitled to priority. First of all, this came-and the reason I went, and I'll be very quick, as to how this came up was it wasn't briefed initially, and the whole issue came up in the context of a motion to reconsider. And Judge Albert did not determine this on who had the burden of proof. He said, well, I initially ruled against you. In that ruling, he did not say when it was done. He actually says at the end of that first order that the record is unclear on pinpointing the date, but even if the record is unclear, the Brewer Group loses for other reasons. So Judge Albert never determined anything about that lien, actually. He had three other reasons why we lost, and he said, so I don't have to make a finding on when this occurred. Let me ask you about one of those other reasons. One of the reasons were that Pacific Mercantile Bank held the senior lien, and it was on all the money to pay what was owed to them except for a carve-out to pay the accountant's fees, which are the money at issue in this case, but the carve-out was limited to the accountant's fees. Do we need, if we accept the proposition that the bankruptcy judge was right that their lien was senior and that it would exhaust the funds, then do we need to decide any of the rest of the case? Well, actually, I would submit, Your Honors, undisputed that the carve-out would not have been exhausted. How could it not have been exhausted? If you carve out money is owed to a third party, and then there's a determination of how much money is owed to the third party, so that's all the money that gets carved out, how could it leave any money over? There was still a million, there was only $800,000 left owed to Pacific Mercantile Bank. A million dollars were released for payment. That $800,000, and these are round numbers, was credited against what was owed to Pacific Mercantile, because that's a carve-out. They can't give away somebody else's money. They can only carve out their money. Let me back up. Let's see. Only $800,000 was owed to Pacific Mercantile. Because of prior payments on that settlement. And how much money was there total? There was a million dollars authorized to be paid to the trustee's accountants. A million available. So why wouldn't Pacific Mercantile's interest plus the carve-out for the accountant's interest more than still remain unsatisfied after they both got all the money? The carve-out is credited against Pacific Mercantile's debt. They say, we have a lien in this, you can take X number of dollars, and that's credited against what is owed us. And they were only owed $800,000 at the time the million dollars was released to the accountants. So after the $800,000 is credited. So the accountants wind up getting all their money and Pacific Mercantile gets no money because the carve-out exceeded the amount they were owed. After the payment was credited to the carve-out, $200,000 was paid to the accountants, which they weren't entitled to. So what the fight is about here, is that $200,000? Well, with respect to the PMB, with respect to when was the assignment affected, and the reason that's the most important to us is because that's for all of the property of the estate as opposed to this discrete fund. If we lost on PMB, we'd still have our lien claim. And that's why we have focused on that one question of when did it happen. Now, Judge Albert specifically found that it did not occur in February. In fact, he expressed some skepticism about that where he says, that's not really your view, is it? He did not find in his first ruling that there was an oral assignment because that wasn't argued to him. On his second ruling, on the motion to reconsider, he refused to make any additional findings other than that the three prongs of Rule 59 had not been met. There were no other factual findings. So there's never a finding that there was an oral assignment in February. So all we're left with is March. And the testimony is that that was created on March 15th, given to Mr. Hartke. It was a tempest in a teapot as to whether it was signed or not on March 15th. Mr. Martin says it was signed after I left, sometime in March, or after March, after I left. And, Your Honor, I'd like to reserve the rest of my time. All right. Thank you. Thank you. Good morning. May it please the Court. I'm Roy Zerr. I represent Howard Gropestein, the Chapter 7 Bankruptcy Trustee for Point Center Financial. The issue of when did the assignment occur is important because obviously if the assignment took place before the lien, there was nothing for the lien to attach to because the property of the debtor was no longer property of the debtor. That's the issue here. Who has the burden of proof of when that assignment was made? The burden is on the appellant here because the appellant has to prove under Section 363P2 the extent and validity of its lien. That's part of the bankruptcy code, right? 11 U.S.C.? 11 U.S.C. Section 363P2. It specifically says that the party asserting an interest in property of the estate has the burden of proof on the validity, priority, and extent of that lien. As part of that burden, you have to prove not only that you have the lien but also what property it attaches to. That's where the issue of the assignment comes up because if the assignment took place, which just to back up, there was a summary judgment order of the bankruptcy court in 2014, in late 2014, that already had adjudicated that the assignment took place in March of 2012. What was the evidence that enabled the bankruptcy judge to make his finding that the assignment preceded the lien? What the appellant did was they wanted to prove that their lien predated the assignment. I'm asking you what evidence is there that supports the bankruptcy judge's finding that the assignment preceded the lien so there was nothing for the lien to attach to? The deposition of Dale Martin, who was the in-house attorney at PCF, he testified, as my opponent stated, he testified that he was asked in mid-February of 2012 by Mr. Harkey to go ahead and prepare assignment documents and that on March 15, he actually provided the draft to Mr. Harkey. He then says, I don't know when it was signed. I wasn't involved in that. He specifically said, I don't want to testify about that. That was the assignment papers? Yes. So the assignment papers, he delivered them to the person who had to execute the assignment on about the same date the lien attached. The lien attached the following day. The lien attached on March 16 when the ORAP was served. And when did he say he provided his draft? He provided the draft on March 15. And there's an email that he has given, which is an exhibit to his deposition transcript, where he says, yes, that's the email where I transmitted the draft, and it happened on March 15. So you would be entitled to win if the evidence definitively established that Harkey signed the same day, and the appellant would be entitled to win if the evidence definitively established that they were signed at least later in the day on the next day. I don't think that that's true, and here's why. California law is pretty clear, and we've cited the amalgamated case, which says pretty clearly that under California law, assignments require very little by way of formalities. All you need is for the assignor to manifest an intention to transfer some property. You mean if the assignor says to his lawyer, I want to assign property to a third party, and a few days later his lawyer gives him papers to sign, and a few days after that the assignor gets around to signing the papers in front of a notary. Nevertheless, California treats the assignment as having been made when he told his lawyer what he wanted to do. I think in this particular case that would be one plausible conclusion that you could reach. That doesn't sound right to me. People change their minds all the time. Well, the reason is that Mr. Harkey, remember, Mr. Harkey controlled both PCF and CALCOM. He was transferring property from one pocket to another. The issue of formality here was really irrelevant. I mean, really what he was trying to do. With formality, I could see where that might go to whether the writing was sufficient, whether it was properly notarized and acknowledged. But I don't know, does formality extend even to whether it was signed? It should. I mean, really, because all he's doing is he's because he's. I would think an assignor would want to reserve his right to change his mind until he actually signed his name. If you look at this in context, what Mr. Harkey was looking to do was to engage in judgment avoidance activities, right? And so I don't know. In mid-February of 2012, the precipitating factor here is that the Brewer Group, for which the appellant acts as a receiver in aid of execution, they obtained their judgments at that time. So if I'm getting this right, he basically sought to effectuate a fraudulent transfer. That's right. The issue is when he executed the document or when he at least intended to make the fraudulent transfer. Correct. And you're saying that he succeeded in making the fraudulent transfer when he thought about it and directed his lawyer to prepare the papers for it? I'm saying that that would be one plausible conclusion that you can draw from it. And what you have before you . . . That's enough for the bankruptcy judge to say, yes, I find as a matter of fact that he did indeed assign the money when he decided he wanted to effectuate a fraudulent transfer and told his lawyer to prepare the papers, so we don't need to know when they were signed. It's correct when the appellant states that the bankruptcy judge did not in fact find that the transfer took place when he had this conversation in his mind about, I would like to go ahead and commit this fraudulent transfer. The date you need is the date of the conversation, right? Sure. But what the bankruptcy judge concluded, and you really have to take a step back, what the bankruptcy judge concluded was that it is likely that by the time the liens attached, the property was already gone. That was the conclusion, and that is the finding that this court is now reviewing. Not a specific date. He repeatedly said, I don't need to find a specific date. I don't have a problem with the specificity of time. If the bankruptcy judge were to say, well, there's evidence for January 2 and there's evidence for February 3 and evidence for March 4, but I don't need to decide which it is because they're all before March 15, that would make perfect sense as supporting the finding. But I'm having more trouble when we say he has to have signed or he doesn't have to have signed anything so long as he told his lawyer before the liens attached that he wanted to. What the district court concluded, and I understand that the district court's order is not really relevant for purposes of this review, but what the district court concluded was, look, on this record, we have multiple plausible dates. It could be March 16. It could be March 15. It could be mid-February. And on a clear error standard of review. I'm sorry? How could it be mid-February? Well, that's Mr. Martin, the in-house lawyer. He testified that in mid-February he was told by Mr. Harkey to go ahead and draft these documents. Oh, I see. That's when. Right, and so what the district judge. It could be as early as February. That's right. It could be as early as February. It could be March 15. How could it be as early as February if Harkey didn't execute the assignment because Martin had not yet drafted the papers? Well, that goes to the sort of oral assignment, right? If there had been a third person involved here and if it wasn't Harkey transferring from one of his pockets to another, it would be a lot easier to grapple with logically. I'm still thinking about first-year property where in order to transfer realty, you needed infestment by picking up a clod of earth and giving it to the grantee. And this is the opposite extreme. This is, well, it's not real estate. All I have to do is think about it. That's right. Personal property could be transferred orally. But a gift. And if Mr. Harkey wants to have a conversation with himself. It really needs to be signed, sealed, and delivered. So you're saying the delivery of this, you know, the signing of the assignment formally in a writing doesn't count or isn't essential to the transfer? Right. Is there a case law that supports your position? There's a case, Your Honor. There's a case called, well, let me back up. There's the amalgamated case, which we cited in our briefs. That goes to, that states California law in general about what's required for an assignment to be effective in California. Okay. And it says clearly that all you need is to manifest an intention to transfer property. If I had to ask, ignore. Okay. Do you have to manifest an intention to anyone, like maybe your wife at home, or do you have to manifest an intention to the assignee? Well, I think here it's the same. It would be the same conclusion, right? Because he's, if he is. I don't know if it would be. It depends on what manifesting an intention means. If you tell the assignee, if the assignor tells the assignee, I'm assigning $100,000 to you. That's different from the assignor telling his wife or his lawyer, I want to assign $100,000 to the assignee. I think what you have here is if, let's pretend for a moment that Mr. Harkey was actually assigning something to someone else. Okay. What you would have here is Mr. Harkey telling this hypothetical person, I'm going to transfer this property to you. And then, same day, going to his lawyer and saying, please document this assignment. Obviously you don't have that conversation. But what you're saying is effectively he did tell the assignee because the assignee is another of his own companies. That's exactly right. But my problem with that rationale is he's proposing a fraudulent transfer here, and he might think twice before he signs the paper doing it. Well, I'm not sure about that because I think that, you know, by the time this came up, when we were in the bankruptcy court litigating the issue of the fraudulent transfer, and really this all came up in 2016, in July 2016, two years after we had already obtained a judgment avoiding this particular assignment as a fraudulent transfer. Mr. Harkey's defense in that adversary proceeding, in the fraudulent transfer proceeding, was I made this transfer in good faith because I was trying to protect the money that Point Center was holding for the benefit of third parties. He thought what he was doing was a great thing. And so I think when you place it in that context, while I understand your point about, well, he might think twice about committing this fraudulent transfer, he was looking at it as doing a good deed. Of course, the bankruptcy court rejected that. The money out of his creditor's hands when it seemed fair to him to. Right. Well, the bankruptcy court rejected that defense and concluded that, yes, of course, this was a fraudulent transfer regardless of whether you thought it was a good thing. But you know what just occurs to me? If, in fact, though the law really required a written document, then it wouldn't be a tempest in a teapot whether the judgment lands were the 15th or the 16th of March. That would become critical. The bankruptcy court obviously didn't think so because he must not have thought it required a written assignment. Well, that's right. I mean, when we brought up the issue of, look, it might have even happened in February when he instructed the lawyer to go ahead and memorialize this transfer. The judge said, well, really? I mean, you're really saying that Mr. Harkey had this conversation with himself? We said, we don't know. It's possible. Obviously, when he told his lawyer to go ahead and do it, that was pretty strong evidence that he had wanted to do it. We didn't see any evidence that the draft was any different from the executed version. In fact, I think it was identical. But the point was that the bankruptcy judge concluded that it was likely that by the time the lien attached, the property was gone. And the record that the appellant submitted to the bankruptcy court, not only does it not conflict with that conclusion, it actively supports it because of what Mr. Martin described about when he was asked to draft the assignment and when he actually transmitted it to Mr. Harkey. And so, you know, on this record, there cannot be clear error because you have multiple plausible conclusions that you can draw, and the law is pretty clear. The Hinkson case in this circuit makes it pretty clear that if you've got multiple plausible conclusions that you can deduce from the evidence, there cannot be clear error. Did Harkey testify at all? Did somebody depose Harkey and ask him when he'd signed the assignment papers? No. What he did was he actually submitted declarations in opposition to various motions that we had filed in the case. And one of these documents is in the record. What he actually said was, oh, I submit, I actually effectuated these assignments in 2011. In another declaration that he filed in another case, which the appellant had attached to the motion for reconsideration that they had filed, he said, oh, I did it in response to their levy efforts, which they interpreted as having been in July of 2012. Wait. If he had actually assigned in 2011, as his declaration said, then the bankruptcy judge would be absolutely right. Right. So he didn't say that in a declaration. He said it in a pleading. Oh, I thought he said he did it in a declaration. That's under oath. A pleading, you can't go to jail if it's false. I understand. A declaration, you can. What he actually did, and I apologize, I don't have the reference, but it's in Exhibit D. It's in Exhibit D to one of his declarations. He had filed a declaration where he said, see Exhibit D, which is a document that I filed in this case, and that Exhibit D is a pleading where he said, I did it in 2011. So you're saying it's an adoptive. Correct. He didn't say, I hereby incorporate it by reference. Essentially. Right. He didn't say I incorporate it by reference, but he did say, here's see Exhibit D. Exhibit D was the document where he says, I did it in 2011. And what did the bankruptcy judge say about 2011? So the bankruptcy judge didn't actually address any of this because the first time that it came up was in the motion for reconsideration. And what the bankruptcy court did, and he didn't go into specifics, he said, you haven't convinced me that my finding, which was, again, that the assignment likely predated the lien, you haven't convinced me that. You've got a fraudulent transfer. You've got what appears to be a lying or tricky declaration, a declaration that's true but incorporates by reference a lie. And the bankruptcy judge didn't say anything about that? No, because all it would have done was further support the conclusion that the judge had already reached prior to the motion for reconsideration, so he didn't find it necessary. He said, look, nothing you've presented to me alters my conclusion. I think my finding, which is that it's likely that it took place, that the assignment took place prior to the lien, I think that that's correct. Thank you. Our questions took you over your time, but we appreciate the argument. Thank you very much, Your Honors. Thank you, Your Honors. I will go quickly. The burden of proof here we submit rests actually on the appellee. Judge Albert found that we had liens. He said in his oral statement on the motion to reconsider, well, if what you're concerned about is whether you have liens, you have them. The question then turned to whether this particular pot of money was subject to those liens, and their affirmative defense was that it had already left. So it was presented in the context of an affirmative defense, and the proponent of an affirmative defense has the burden of establishing that affirmative defense. But you're asserting an interest in this property. Yes. And the Bankruptcy Code makes it pretty clear that the burden of proof is on the party asserting an interest in the property. But the judge found that, indeed, we satisfied the burden of proving that we had liens. Then we turned to the question of, was this property still property of the estate? What was the effect of that assignment? There the burden should have shifted back to them. And, in fact, in the case of on the side of this Cockerell v. Title Insurance, it is a California State case, 42 Cal 2nd 284. They say the burden of proving an assignment falls upon the party asserting rights thereunder. And here that was the trustee because he was saying because of that assignment, the property is gone, and you, therefore, don't have liens. Mr. Harkey's test, there was no evidence before the court for February. And, in fact, the court rejected February. Certainly in its first ruling, it never said February because that wasn't argued to it. In the second ruling, he said, I'm just making Rule 59 findings. If Mr. Harkey had already effectuated the assignment, why did he bother going ahead and finalizing the documents? And, in fact, in his declaration, which we did submit and we cite in our opening brief, he said, I did this sometime in spring or summer, especially May. So all of the evidence before the court was that this had happened back after March. The bankruptcy, they argued. Mr. Harkey said spring or summer? Yes. Spring in Southern California or Alaska? He's a Southern California boy. He's a Southern Californian? Yes, sir. But he also said summer, and then he specifically mentioned May. So there's no evidence. The bankruptcy court rejected February. So it says he signed the assignment in spring or summer? Sometime thereafter, but it was dated August. So we have that lack of testimony. We do have Mr. Martins consistently saying it was after March. He drafted it. He sent it. And after March, it got to Mr. Harkey. We've met our burden. And the bankruptcy court, as I say, it's dated August of 2012. But the bankruptcy judge said it was backdated. It was backdated. What was the explanation of why it was backdated? It was a fraudulent conveyance. Because it was fraudulent? It was a fraudulent conveyance. But the bankruptcy judge, in many prior rulings at the trustee's behest, found that the assignment occurred in mid-March. That was a finding they requested. They are judicially estopped from now saying, oh, actually, it happened in February. They got summary judgment based on arguing it occurred in mid-March, no specific date. So they cannot now argue February. Once you get to mid-March as the only date, there is no evidence that would support a finding of March 15 or 16. And by the tempest in a teapot comment, Judge Alberts essentially repudiated that. And so there is no evidence that would support a finding that the assignment occurred before Arlene's attached. And under your argument, then, it would be critical who bears the burden. I think you also have to look at what the evidence is. Thank you very much, both sides, for your argument in this case. The matter is submitted.
judges: Gilman, Kleinfeld, Nguyen